UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GOVERNMENT EMPLOYEES             :
INSURANCE COMPANY; GEICO         :
INDEMNITY COMPANY; GEICO         :
GENERAL INSURANCE COMPANY;       :      **MEMORANDUM & ORDER**
and GEICO CASUALTY COMPANY,      :      24-cv-995 (DLI)(VMS)
                                 :
            Plaintiffs,          :
                                 :
      -against-                  :
                                 :
ACTIVE MEDICAL CARE, P.C., NJ PAIN :
& SPINE, PC; and EDNAN SHEIKH, M.D., :
                                 :
            Defendants.          :
-------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On February 8, 2024, Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company ("Plaintiffs") filed the instant action against Active Medical Care, P.C. ("Active Medical"), NJ Pain & Spine, PC ("NJ Pain"); and Ednan Sheikh, M.D. ("Sheikh") (collectively, "Defendants") for claims arising out of allegedly fraudulent insurance reimbursement requests for car accident victims' medical treatment. *See*, Complaint ("Compl."), Dkt. Entry No. 1. Plaintiffs seek a declaratory judgment that Defendants have no right to reimbursement, assert civil RICO claims against Sheikh pursuant to 18 U.S.C. § 1962(c), and allege fraud and unjust enrichment claims against all defendants. *Id.* at ¶¶ 249–92. Defendants moved to dismiss the Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or, in the alternative, transfer the case to the United States District Court for the District of New Jersey ("District of New Jersey"). Defs.' Mot. to Dismiss ("Defs.' Mot."), Dkt. Entry No. 17-5. Plaintiffs opposed the motion. Pls.' Opp'n ("Opp'n"), Dkt. Entry No. 19. Defendants replied. Reply, Dkt. Entry No. 23.

For the reasons set forth below, Defendants' motion to transfer venue is granted, and this case hereby is transferred to the District of New Jersey. The Court finds that transfer, rather than dismissal, is the appropriate remedy in this instance. The parties currently are engaging in discovery, and Plaintiffs simply could refile their claims in the District of New Jersey if they are dismissed. Such "extra expense and delay required if a case is dismissed only to be refiled in another district [] justif[ies] transfer over dismissal." *5381 Partners LLC v. Shareasale.com, Inc.*, 2013 WL 5328324, at *10 (E.D.N.Y. Sept. 23, 2013). Accordingly, the Court need not address Defendants' motion to dismiss the case.

## BACKGROUND

Plaintiffs are Nebraska corporations with a principal place of business in Maryland. *See*, Compl. ¶ 6. Sheikh, a New Jersey physician, owns and controls NJ Pain, a New Jersey professional corporation, and Active Medical, a professional corporation based in Pearl River, New York. *Id.* at ¶¶ 3, 7–9; Declaration of Ednan Sheikh ("Defs.' Decl.") ¶¶ 7, 14, Dkt. Entry No. 17-1.[1] Defendants operated their medical practice out of ten multidisciplinary healthcare clinics located in New York and New Jersey (the "Clinics"). Compl. ¶ 70. Of those ten Clinics, seven are in New Jersey, one is in Manhattan, and two are in Queens. *Id.* However, Sheikh attests that NJ Pain and Active Medical rarely saw patients in this District. *See*, Defs.' Decl. ¶¶ 19–23.

Plaintiffs allege that, between 2017 and the present, Defendants submitted fraudulent no fault, or Personal Injury Protection ("PIP"), insurance reimbursements relating to medical treatment incurred by car accident victims. Compl. ¶ 58. Plaintiffs claim that such reimbursements

---

[1] Defendants assert that Active Medical is registered in Pearl River, New York with the Department of State, but did not include any documentation supporting this assertion. *See*, Defs.' Mot. at 6. However, the Court takes judicial notice of Department of State records confirming that Active Medical is based in Pearl River, New York. *See*, *J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co.*, 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 9, 2018) ("The Court can and does take judicial notice of information from the New York Secretary of State's website.").

2

were fraudulent because Defendants: (1) were not entitled to PIP benefits to begin with; and (2) sought reimbursement for medically unnecessary procedures. *Id.*

Specifically, pursuant to New York and New Jersey law, insurers only are required to reimburse entities that comply with state licensing laws and regulations. 11 N.Y.C.R.R. § 65-3.16(a)(12); *Varano, Damian & Finkel, L.L.C. v. Allstate Ins. Co.*, 366 N.J. Super. 1, 6 (App. Div. 2004). Accordingly, Plaintiffs assert that Defendants were not entitled to PIP benefits because: (1) NJ Pain and Sheikh operated a medical practice in New York without authority to do so; (2) all Defendants unlawfully referred patients to entities in which Sheikh had a financial interest, known as "self referrals"; and (3) Sheikh and NJ Pain engaged in an unlawful "kickback" scheme in which they received patient referrals from the Clinics in exchange for: (a) referral fees disguised as "rent" payments; and (b) return referrals to the Clinics. *See*, Compl. ¶¶ 59–74, 178–219; N.J.S.A. 45:9-22.5; N.J.A.C. 13:35-6.17(c)(1); NY. Educ. Law §§ 6509-a, 6530, 6531; 8 N.Y.C.R.R. § 29.1.

Plaintiffs further allege that, as a result of this unlawful scheme, Defendants submitted charges for medically unnecessary examinations, tests, and procedures. Specifically, Sheikh and NJ Pain purportedly examined patients referred by the Clinics, misrepresented the nature, extent, and results of such examinations, and exaggerated the severity of the patients' injuries to get reimbursed at a higher rate. Compl. ¶¶ 66–162. Based on these fraudulent examinations, NJ Pain and Sheikh subjected patients to extensive electrodiagnostic ("EDX") testing, which they submitted to Plaintiffs for reimbursement. *Id.* at ¶¶ 220–39. NJ Pain and Sheikh then used the fraudulent examinations and tests to justify referrals for medically unnecessary pain management injections at Global Surgery Center LLC ("Global Surgery"), a New Jersey ambulatory care facility in which Sheikh had a financial interest. *Id.* at ¶¶ 163–204. Plaintiffs also allege that, as

3

part of this scheme, Sheikh self referred patients to Active Medical and sought reimbursement for medically unnecessary drug screenings. *Id.* at ¶¶ 205–19. The screenings were conducted in Pearl River, New York, where Active Medical's lab is located. Defs.' Decl. ¶ 27.

As a result of this scheme, Plaintiffs allege they paid out approximately $400,000 in claims to NJ Pain, and $500,000 in claims to Active Medical, totaling more than $900,000 in damages. *Id.* at ¶¶ 258, 278. However, since 2016, Plaintiffs only paid out $48,000, or about 5% of the damages, to NJ Pain for services rendered in this District. Declaration of Kathleen Asmus ("Pls.' Decl.") ¶ 5, Dkt. Entry No. 19-1. Plaintiffs did not disclose the amount paid out to Active Medical for services rendered in this District. Instead, they assert that, since 2014, Active Medical submitted over $815,000 in reimbursement requests pursuant to New York insurance policies. Pls.' Decl. ¶ 5. Of that amount, Active Medical submitted $105,000 in claims for services rendered in this District, and Plaintiffs paid out $372,000 to Active Medical for all New York insureds, not just those in this District. *Id.* By totaling the $48,000 in claims paid to NJ Pain and $372,000 paid to Active Medical, Plaintiffs assert that approximately $420,000, or half of their damages, are based on claims submitted pursuant to New York policies. Opp'n at 11; Pls.' Decl. ¶ 5.

Plaintiffs processed and paid out claims for New York policies from their office in this District. Compl. ¶ 14; Pls.' Decl. ¶ 5. While Plaintiffs did not disclose where they process claims for New Jersey policies, it appears that they do so from offices located in New Jersey. *See, Gov't Emps. Ins. Co. v. Yoo*, 2019 WL 3752761, at *3 (E.D.N.Y. Aug. 8, 2019) ("GEICO also has offices in New Jersey where the New Jersey-based reimbursement requests were processed.").

## DISCUSSION

**I.     Transfer of Venue Pursuant to § 1404(a)**

A district court may transfer a civil action to any other district where the action might have

4

been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). When making a motion to transfer venue, "[t]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" *Audiovox Corp. v. S. China Enter., Inc.*, 2012 WL 3061518, at *7 (E.D.N.Y. July 26, 2012) (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)); *See also*, *In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp.2d 164, 168 (E.D.N.Y. 2006). At the same time, "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "In deciding a motion to transfer, a court may consider material outside of the pleadings." *Justiniano v. First Student Mgmt. LLC*, 2017 WL 1592564, at *1 (E.D.N.Y. Apr. 26, 2017) (citation omitted).

To determine whether a motion to transfer venue should be granted, the Court must apply a two-pronged test: "(1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would 'promote the convenience of parties and witnesses and would be in the interests of justice.'" *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp.2d 342, 347 (E.D.N.Y. 2012) (quoting *Clarendon Nat'l Ins. Co. v. Pascual*, 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000)).

The second case specific analysis generally involves the consideration of the following nonexhaustive list of factors, none of which is dispositive: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9)

trial efficiency and the interest of justice, based on the totality of the circumstances. *See*, *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp.2d 370, 373 (S.D.N.Y. 2006).

The parties do not dispute that this action could have been brought in the District of New Jersey. Two of the three defendants are New Jersey citizens, and substantial events giving rise to the claims took place there. *See*, 18 U.S.C. § 1965(a); 28 U.S.C. § 1391(b)(1), (2); *Dealtime.com Ltd. v. McNulty*, 123 F. Supp.2d 750, 754–55 (S.D.N.Y. 2000). Since this action could have been brought in the District of New Jersey, the Court need only address the § 1404(a) factors.

### A. Convenience of the Parties and Witnesses

Convenience of the witnesses is one of the most important considerations when deciding a motion to transfer venue. *See*, *Schwartz v. Marriot Hotel Serv., Inc.*, 186 F. Supp.2d 245, 249 (E.D.N.Y. 2002) (citation omitted); *See also*, *Nieves v. American Airlines*, 700 F. Supp. 769, 772 (S.D.N.Y. 1988) (citation omitted). However, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp.2d 542, 547 (S.D.N.Y. 2008) (quoting *Indian Harbor Ins., Co. v. Factory Mut. Ins. Co.*, 419 F. Supp.2d 395, 402 (S.D.N.Y. 2005)).

The parties agree that, in light of the close proximity between New York and New Jersey, the Court could compel any relevant witness to testify. Defs.' Mot. at 21; Opp'n at 23; Fed. R. Civ. P. 45(c). However, Plaintiffs argue that this District is more convenient for the witnesses because: (1) Active Medical is located in New York; (2) Defendants operated out of clinics in this District; and (3) their employees paid out claims for New York insureds from their office in this District, and, thus, many of their witnesses are located here. Opp'n at 22–23. Defendants, on the other hand, assert that most of the parties and key nonparty witnesses are located in New Jersey. Defs.' Mot. at 19–20.

6

The convenience of the party witnesses weighs in favor of transfer. In analyzing the convenience of the parties, "[t]he logical starting point is a consideration of [their] residence." *U.S. Fidelity & Guar. Co. v. Republic Drug Co.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992). Two of the three Defendants reside in New Jersey. Compl. ¶¶ 8–9; Defs.' Decl. ¶¶ 12–13. Active Medical is based in the Southern District of New York, and Sheikh, its primary owner and operator, resides in New Jersey. Compl. ¶¶ 7, 9; Defs.' Decl. ¶¶ 7, 12, 14. The fact that Defendants treated patients in this District does not change their residence. Moreover, Plaintiffs have failed to explain how testifying in New Jersey would be unduly burdensome for their New York employees, and ignore the fact that New Jersey would be more convenient for any witnesses from their New Jersey offices. Indeed, Plaintiffs made similar arguments before the Honorable Edward R. Korman, U.S. District Judge of this Court, in *Gov't Emps. Ins. Co. v. Yoo*, 2019 WL 3752761 (E.D.N.Y. Aug. 8, 2019). Judge Korman rejected these arguments and transferred the case to the District of New Jersey, observing that GEICO is "a large, nationwide insurance company, [and] will face no difficulty litigating in the District of New Jersey as opposed to the Eastern District of New York." *Yoo*, 2019 WL 3752761 at *3; *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp.3d 385, 399 (S.D.N.Y. 2014) ("The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant.").

Most of the material nonparty witnesses reside in New Jersey as well. In analyzing this factor, courts should "qualitatively evaluate the materiality of the testimony that the witnesses may provide" instead of merely "tally[ing] the number of witnesses." *See*, *Mazuma Holding Corp. v. Bethke*, 1 F. Supp.3d 6, 30 (E.D.N.Y. 2014). Here, Defendants' alleged kickback and self referral scheme is central to this case. While the parties did not identify specific nonparty witnesses, seven

7

of the ten Clinics that participated in the alleged kickback scheme are located in New Jersey, and only two are located in this District. Compl. ¶ 70. Global Surgery Center, one of the key nonparty participants in the alleged self referral scheme, also is located in New Jersey. *Id.* at ¶ 195. Thus, it is reasonable to infer that witnesses from the Clinics and Global Surgery are concentrated in New Jersey. More importantly, these nonparties are critical to the case, and, thus, the parties likely will seek their testimony. Accordingly, the convenience of the parties and witnesses weighs in favor of transfer.

      **B.**      **Location of Relevant Documents and Ease of Access to Sources of Proof**

The location of the relevant documents is neutral. This factor assumes somewhat less importance in today's "era of electronic documents, easy copying and overnight shipping." *N. Food I/E, Inc. v. OCM Globe Inc.*, 2022 WL 2812204, at *11 (E.D.N.Y. Mar. 28, 2022); *DiStefano v. Carozzi N. Am., Inc.*, 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred . . . modern photocopying technology deprives this issue of practical or legal weight." (citations omitted)). Defendants contend that this factor is neutral. Defs.' Mot. at 20. However, Plaintiffs assert that a "substantial majority" of their evidence is in this District because their employees processed New York insureds' claims here. Opp'n at 24. However, they did not disclose whether the claim processing documents are stored in hard copy or electronic format.

Plaintiffs have failed to explain how making documents available in New Jersey would be unduly burdensome, particularly in light of modern electronic discovery tools and the proximity between the two districts. Furthermore, Plaintiffs' affidavit indicates that half of their damages arise out of claims paid and processed from their New York office, not a "substantial majority." Pls.' Decl. ¶ 5; Opp'n at 11. Thus, the Court finds that this factor does not favor either side.

8

### C. Locus of Operative Facts

The locus of operative facts weighs in favor of transfer. The locus of operative facts is a "primary factor" in a motion to transfer venue. *Ruiz ex rel. E.R. v. United States*, 2014 WL 4662241, at *12 (E.D.N.Y. Sept. 18, 2014). When determining the locus of operative facts, a district court must "look to the site of events from which the claim arises" and should transfer the case where the "principal events occurred in another district and the principal witnesses are located there." *Fulton v. Newkirk*, 2021 WL 3037592, at *3 (E.D.N.Y. July 19, 2021).

Plaintiffs contend that their claims are connected to this District because: (1) half of their damages arise out of Defendants' actions in New York; (2) Plaintiffs "relied upon and paid" such claims from their office in this District; (3) Defendants commenced arbitrations in this District to contest rejected bills; and (4) Defendants unlawfully operated out of Clinics in this District. Opp'n at 13–16, 25–26. Defendants, on the other hand, emphasize that most of the allegedly fraudulent conduct at issue occurred outside of this District. Defs.' Mot. at 15–16, 21.

Plaintiffs' arguments closely resemble those rejected by Judge Korman in *Yoo*. There, as it does here, GEICO argued that a significant portion of its damages were based on claims submitted pursuant to New York policies that were processed at their office in this District. *See*, *Yoo*, 2019 WL 3752761 at *3. However, Judge Korman observed that this argument simply was an attempt to "obscure[] the fact that the bulk of the more than $6,000,000 in damages sought in this action are based on conduct occurring in New Jersey." *Id.* As in *Yoo*, the claims here are based on Defendants' fraudulent conduct. Thus, the locus of operative facts lies where such conduct occurred. Paying out claims and initiating arbitrations in this District are not "events from which the claim[s] arise[]," as they are not part of the underlying fraud at issue. *Newkirk*, 2021 WL 3037592 at *3.

9

Furthermore, Plaintiffs' assertion that $420,000, or "half" of their damages, arise out of New York based claims is highly dubious. Plaintiffs' $420,000 figure is comprised of: (1) $372,000 paid to Active Medical since 2014; and (2) $48,000 paid to NJ Pain since 2016. Pls.' Decl. ¶ 5. However, the Complaint alleges that Plaintiffs incurred $900,000 in damages from 2017 to the present. Compl. ¶¶ 58, 258, 278. Accordingly, the Court places little weight on Plaintiffs' $420,000 damages figure since it may be inflated by payments made outside of the relevant period.

Even if accepted as true, the evidence suggests that relatively little fraudulent conduct occurred in this District. Out of more than $900,000 in alleged damages, only $48,000, or about 5%, was paid to NJ Pain for services provided in this District. Pls.' Decl. ¶ 5. Moreover, the Complaint itself admits that "*virtually all* of the pain management injections billed through NJ Pain . . . purportedly were provided at Global Surgery Center [in] . . . Oradell, New Jersey." Compl. ¶ 195 (emphasis added). Similarly, since 2014, Active Medical submitted over $815,000 in reimbursement requests pursuant to New York insurance policies, but only $105,000 arose out of services rendered in this District. *Id.* Tellingly, Plaintiffs did not disclose the amount it paid out to Active Medical for services rendered in this District. However, even if Plaintiffs paid out all $105,000, which they probably did not, it still would constitute only less than 12% of the damages sought in this action. Indeed, Active Medical conducted most of its drug screenings in the Southern District of New York, where its lab is located. Defs.' Decl. ¶ 27.

Furthermore, the evidence suggests that Defendants primarily devised their fraudulent scheme in New Jersey. *See*, *Forsher v. J.M. Smucker Co.*, 2019 WL 235639, at *6 (E.D.N.Y. Jan. 16, 2019) (locus of operative facts located where defendants made "strategic decisions" that "form[ed] the basis of Plaintiff's claims"). Sheikh, NJ Pain, Global Surgery, and most of the Clinics are based in New Jersey, and, thus, they likely developed, organized, and executed their

10

fraudulent scheme there. *See*, *Yoo*, 2019 WL 3752761 at *3 (observing that "critical aspects of the alleged fraudulent scheme [] took place in New Jersey, such as . . . [the] arrangement to provide [defendant] with an ownership interest in [the clinic] in exchange for referrals, and [the clinic's] subsequent failure to disclose that arrangement to New Jersey authorities"). Thus, the locus of operative facts is in New Jersey and this factor weighs in favor of transfer.[2]

### D. Relative Means of the Parties

The parties agree that this factor is neutral. *See*, Opp'n at 26 ("There is no practical difference between the expense of litigating this case in the Eastern District of New York and litigating this case in the District of New Jersey."); Defs.' Mot. at 21 (noting that this factor is "neutral" and observing that "there would not be a significant increase in cost to either side to litigate in one district or the other"). Accordingly, this factor does not favor either side.

### E. Forum's Familiarity with the Governing Law

The forum's familiarity with the governing law is considered "one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Nat'l Experiential, LLC v. Nike, Inc.*, 2021 WL 9678642, at *6 (E.D.N.Y. July 31, 2021) (quoting *Abramowitz v. Tropicana Atl. City Corp.*, 2015 WL 1014511, at *5 (E.D.N.Y. Mar. 6, 2015)). This factor is given little weight because "federal courts are deemed capable of applying the substantive law of other states." *Charlot v. Ecolab, Inc.*, 2018 WL 11427944, at *6 (E.D.N.Y. Mar. 23, 2018) (citations omitted). The District of New Jersey is perfectly capable of interpreting

---

[2] Defendants contend that they only saw a handful of patients in this District on a few days in 2020. Defs.' Decl. ¶¶ 19–23. Without seeking leave of the Court, Plaintiffs filed a "supplemental affidavit" addressing this assertion. Dkt. Entry No. 24. Defendants moved to strike the affidavit because Plaintiffs did not point to any new argument raised on reply that would necessitate an additional filing. Dkt. Entry No. 25. Defendants' motion to strike is granted, as the "supplemental affidavit" effectively constitutes a surreply, and Plaintiffs could have and should have addressed the issue in their opposition. *See*, Defs.' Mot. at 8; Defs.' Decl. ¶¶ 19–22; *Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.*, 2012 WL 4049955, at *6 (S.D.N.Y. Sept. 14, 2012). Even if the Court considered the affidavit, it would not change the Court's analysis.

11

New York law to the extent that it applies in this case. Therefore, this factor is neutral.

### F. Weight Accorded the Plaintiffs' Choice of Forum

A plaintiff's choice of forum is given less deference where, as here, the chosen forum has few substantive ties to the litigation and the plaintiff resides outside of the district. *Bank v. New York State Dep't of Agric. & Markets*, 2021 WL 2012405, at *4 (E.D.N.Y. May 20, 2021); *Yoo*, 2019 WL 3752761 at *4 (citing *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp.2d 246, 262 (E.D.N.Y. 2010)). Indeed, unlike the cases cited by Plaintiffs, the other § 1404(a) factors are not "neutral" such that their choice of forum should be given deference. Opp'n at 20; *Habrout v. City of New York*, 143 F. Supp.2d 399, 401 (S.D.N.Y. 2001) (denying motion to transfer where several defendants had their principal place of business in the Southern District of New York, and the remaining factors did not "clearly" weigh in favor of transfer); *Arabi v. Javaherian*, 2014 WL 3892098, at *9–10 (E.D.N.Y. May 1, 2014) (deferring to plaintiff's choice of forum where the analysis "tip[ped] evenly"); *ESPN, Inc v. Quicksilver, Inc.*, 581 F. Supp.2d 542, 547 (S.D.N.Y. 2008) ("[P]laintiff's choice of forum should be accorded deference in the event that other factors do not weigh strongly in favor of transfer."). Thus, this factor does not weigh against transfer.

### G. Trial Efficiency and the Interest of Justice

Finally, trial efficiency and the interest of justice weigh in favor of transfer. As the foregoing analysis demonstrates, this District has little connection to this matter. By contrast, the "center of gravity" of this litigation is in New Jersey. *See*, *Bombardier Cap. Inc. v. Solomon*, 2000 WL 1721138 at *2 (S.D.N.Y. Nov. 17, 2000) ("The core determination under Section 1404(a) is the center of gravity of the litigation.") (citation omitted). Thus, transferring this case would serve the interests of judicial economy well.

Accordingly, after weighing the factors set forth above, the Court finds that transfer is

12

warranted for the convenience of the parties and witnesses, and in the interest of justice.

## II.     Leave to Amend

"[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). If repleading would be futile, courts should refrain from granting leave to amend. *See*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiffs assert that the Court should grant them leave to amend because "any . . . inadequacies [in the Complaint] would be merely issues of technical pleading rather than substantive defects . . ." Opp'n at 26. However, they do not explain how they would change the Complaint if given the opportunity to do so, nor did they attach a proposed amended complaint, which is the best practice. *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) ("[A]n amendment is not warranted absent some indication as to what appellants might add to their complaint in order to make it viable."); *See also*, *Yoo*, 2019 WL 3752761 at *4 n.3 (rejecting GEICO's request to add New York defendants because it was "an attempt to bolster their efforts to avoid a change of venue"). Thus, repleading would not change the fundamental deficiencies in the Complaint, and, as any amendment would be futile, leave to amend the Complaint is denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion to transfer venue is granted and the motion to dismiss is denied. The Clerk of the Court is directed to transfer this case to the United States District Court for the District of New Jersey.

SO ORDERED.

Dated: Brooklyn, New York
\November 14, 2024

/s/
DORA L. IRIZARRY
United States District Judge